UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL HAWKINS,

        Plaintiff,

    v.

D. MILLER, *et al.*,

        Defendants.

_____

20-CV-1798-LJV
DECISION & ORDER

On December 7, 2020, the *pro se* plaintiff, Michael Hawkins, commenced this action under 42 U.S.C. § 1983.  Docket Item 1.  He asserts claims arising from his confinement at the Orleans Correctional Facility ("Orleans") and alleges that the defendants—Sergeant David Miller; correction officers Frank Petrino, Dylan Peterkin, Justin Cook, Joseph Sullivan, Chad Ramming, and K. Crowley; and nurse Angela Stearne—violated his rights under the First, Eighth, and Fourteenth Amendments.  *Id.*; Docket Item 17.  On July 6, 2021, this Court screened the complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) and found that some of Hawkins's claims could proceed but that the rest of his claims were subject to dismissal.  Docket Item 14.

With the Court's leave, *id.*, on August 23, 2021, Hawkins amended his complaint, Docket Item 17.  On October 6, 2021, the Court screened the amended complaint and dismissed Hawkins's official-capacity claims against all the defendants as well as his claims against Crowley.  Docket Item 18.  But the Court allowed Hawkins's remaining claims to proceed to service.  *Id.*

On July 21, 2022, Petrino moved to dismiss some of Hawkins's claims against him.  Docket Item 37.  More specifically, Petrino moved to dismiss Hawkins's claims

"based on religion," Docket Item 37-1 at 1 (capitalization omitted)—that is, Hawkins's claims under the Free Exercise Clause of the First Amendment, *id.* at 4-7,[1] and under the Equal Protection Clause of the Fourteenth Amendment, *id.* at 8-9.  On August 29, 2022, Hawkins responded, Docket Item 43, and on September 8, 2022, Petrino replied, Docket Item 44.  For the reasons that follow, Petrino's motion to dismiss is denied.

## **FACTUAL BACKGROUND**[2]

On January 15, 2018, Hawkins was "assaulted" by five Orleans correction officers: Petrino, Peterkin, Cook, Ramming, and Sullivan.  Docket Item 17 at 5.  During the assault, "Petrino punched [Hawkins] in the face several times and spit in [his] face," and "Cook kicked [Hawkins] in his head."  *Id.*  When Hawkins "started screaming for help," Petrino, Peterkin, Cook, Ramming, and Sullivan "started punching and kicking [Hawkins] in the face, head[,] and body area."  *Id.*  Ramming "held [Hawkins's] left arm

---

[1] Although Hawkins does not assert a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), *see generally* Docket Item 17, Petrino proactively addresses a potential RLUIPA claim, *see* Docket Item 37 at 7-8.

RLUIPA restricts the circumstances in which the government may "impose a substantial burden on the religious exercise of a person residing in or confined to" a correctional facility.  42 U.S.C. § 2000cc-1(a).  But money damages—the relief Hawkins seeks—are not available under RLUIPA.  *Washington v. Gonyea*, 731 F.3d 143, 145-46 (2d Cir. 2013); *see* Docket Item 17 at 6-7 (requesting only money damages as relief in this action).  Furthermore, Hawkins no longer is confined at Orleans, *see* Docket Item 29, so it is unclear what injunctive relief he could seek against the defendants.  In any event, and as noted, there is no RLUIPA claim raised here, and so the Court does not address what appears to be a straw-man argument by Petrino.

[2] In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  The following facts are taken from the amended complaint, Docket Item 17.  Some capitalization is omitted.

out straight" and "use[d] his foot [to] step[] on the back of [Hawkins's] left elbow [to] try[] to br[eak] [his] arm." *Id.* Meanwhile, Sergeant Miller "stood by and let the violent assault take place."[3] *Id.*

At some point, Hawkins was handcuffed. *Id.* Petrino then called Hawkins a "stupid Rasta" and "pull[ed] and ripp[ed] out over [forty-five of Hawkins's] relig[i]ous dre[a]dlocks," saying, "he not Rasta no more [sic]." *Id.*

After the assault, Hawkins was taken to see Nurse Stearne. *Id.* Hawkins told Stearne "about the assault," "that [his] left arm was broken," and that he "was in excru[c]iating pain." *Id.* Nevertheless, Stearne did not give Hawkins medical treatment, give him anything for the pain, or even document his injuries. *Id.*

Hawkins was moved to the Attica Correctional Facility that same night. *Id.* The next day, Hawkins requested emergency sick call and "was sent to . . . Warsa[w] Community Hospital" where he was "finally treated for [his] injuries." *Id.* at 5-6.

Ultimately, Hawkins suffered "torn and stretched l[i]gaments in [his] left elbow, cuts, bruises to [his] facial area, [a] black eye[, a] busted lip, [and] bruised ribs." *Id.* at 6. Petrino's ripping of Hawkins's dreadlocks caused permanent bald spots on Hawkins's head. *Id.* The assault also caused Hawkins to suffer "deep depression for months" for which he "was placed on mental health [treatment]." *Id.* Hawkins continues to take 600 milligrams of ibuprofen for his elbow injury and still wears an elbow brace. *Id.*

---

[3] The Court previously noted that the original complaint alleged that Miller also "th[rew Hawkins] on the floor" and that the amended complaint omits that allegation. Docket Item 18 at 4 n.2; *see* Docket Item 1 at 5; Docket Item 17. Because Hawkins is proceeding *pro se*, the Court deemed that allegation against Miller to be included in the amended complaint. *See* Docket Item 18 at 4 n.2.

3

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

**I.      FREE EXERCISE CLAIM**

Petrino argues that Hawkins has not stated a free exercise claim because Hawkins has not alleged that Petrino's conduct—the ripping of Hawkins's dreadlocks—substantially burdened Hawkins's sincerely held religious beliefs. Docket Item 37-1 at 5-7. Hawkins responds that his allegations survive a motion to dismiss, Docket Item 43, and this Court agrees with him.

The Free Exercise Clause guarantees the right to free exercise of religion. U.S. Const. amend. I; *see Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). To state a free exercise claim, a prisoner must allege that (1) he has sincerely held religious beliefs and (2) those beliefs were substantially burdened by the challenged conduct of the defendant. *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006) (citing *Ford v. McGinnis*, 352 F.3d 582, 591 (2d Cir. 2003)). "A substantial burden is more than a

4

mere inconvenience" and "involves, for example, a situation where an adherent is forced to modify his behavior and violate his beliefs." *Gill v. Defrank*, 2000 WL 897152, at *1 (S.D.N.Y. July 6, 2000), *aff'd*, 8 F. App'x 35 (2d Cir. 2001) (summary order) (citations omitted). "The relevant question in determining whether [a plaintiff's] religious beliefs were substantially burdened is whether participation in the [religious activity], in particular, is considered central or important" to the plaintiff's religious practice. *Ford*, 352 F.3d at 593-94.

Although prisoners "retain some measure" of the right to free exercise of religion, *see id.* at 588, that right can be limited for "valid penological objectives," such as "deterrence of crime, rehabilitation of prisoners, and institutional security," *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). So if a prisoner states a plausible free exercise claim, the burden shifts to the defendant to show that his challenged conduct was reasonably related to legitimate penological concerns. *See Salahuddin*, 467 F.3d at 275; *see also Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989) (noting that where a prisoner has plausibly alleged that he was denied his right to free exercise, it is "incumbent upon prison officials" to "articulate a particular penological interest that was served" by the denial).

Petrino first contends that "[t]he amended complaint fails to establish that [Hawkins has] a sincerely held belief." Docket Item 37-1 at 5. In fact, Petrino argues, Hawkins "does not even establish what his religion is and what specifically his sincerely held beliefs are." *Id.* Hawkins responds that he "is a register[e]d Rastafarian and has

been for over 10 years."[4]  Docket Item 43 at 2.  He explains that a "true Rastafarian is one who believes in the d[ei]ty of the Eth[i]opian King, see[]s Marcus Garvey as his prophet, [and] sticks to this path no matter what."  *Id.* at 4.  "But the most important element of the faith," Hawkins says, is that a Rastafarian does not "shave, cut, or straighten his hair."  *Id.*  According to Hawkins, a Rastafarian's hair is so important that "it is a sacrilege for even his family to touch his locks" because they are "consecrated to his God."  *Id.*  Of course, it can be difficult to determine the sincerity of a plaintiff's religious beliefs.  *See Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984) ("Sincerity analysis is exceedingly amorphous, requiring the factfinder to delve into the claimant's most veiled motivations and vigilantly separate the issue of sincerity from the factfinder's perception of the religious nature of the claimant's beliefs.").  But Hawkins says that he has been "a registered Rastafarian . . . for over 10 years" and suggests that his beliefs are devout and sincere.  Docket Item 42 at 2-4.  In opposition to a motion to dismiss, that is sufficient to establish his religious belief in Rastafarianism and the

---

[4] The amended complaint does not explicitly allege that Hawkins is a Rastafarian, nor does it otherwise elaborate on Hawkins's religious beliefs.  *See generally* Docket Item 17.  Normally, a court "will not consider [] factual allegations raised for the first time in a brief in opposition to a motion to dismiss."  *See Harrell v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2019 WL 3817190, at *2 n.3 (S.D.N.Y. Aug. 14, 2019).  But given the context provided in the amended complaint—including that Petrino called Hawkins a "stupid Rasta" and pulled out his "relig[i]ous" dreadlocks, Docket Item 17 at 5—the Court finds it reasonable to infer that Hawkins is a Rastafarian even without considering the factual allegations in his response, *see Trs. of Upstate N.Y. Eng'rs Pension Fund.*, 843 F.3d at 566 (on motion to dismiss the court "draw[s] all reasonable inferences in favor of the plaintiff").

Moreover, given the amended complaint's implied references to Rastafarianism, and given Hawkins's *pro se* status, the Court considers the response's factual allegations about Hawkins's religious beliefs as well.  But Hawkins is now on notice that any facts he wants the Court to consider should be pleaded in any amended complaint and not raised in a response.

sanctity of a Rastafarian's dreadlocks.  *See Washington v. Gonyea*, 538 F. App'x 23, 26 (2d Cir. 2013) (summary order) ("In determining whether a prisoner's conduct is motivated by a sincerely held religious belief, we do not evaluate the objective reasonableness of the prisoner's belief; rather, our scrutiny extends only to whether a claimant sincerely holds a particular belief and whether the belief is religious in nature." (internal citations and quotation marks omitted)).[5]

Next, Petrino argues that Hawkins's allegations "do not even rise to a *de minim*[*i*]*s* showing that [he] burdened [Hawkins's] right to practice his religion."  Docket Item 37-1 at 6; *id.* (arguing that Hawkins does not allege "that he could not practice his religion due to removal of some dreadlocks").  But that misunderstands the denial of free exercise about which Hawkins complains.  Hawkins says that Petrino "violat[ed]" a "consecrated" part of him by removing Hawkins's deadlocks.  Docket Item 43 at 4.  In fact, Petrino allegedly interfered with the "most important element" of Hawkins's faith: Hawkins's religious mandate not to "shave, cut, or straighten his hair."  *Id.*  That allegation plausibly suggests that Petrino substantially burdened Hawkins's sincerely held religious beliefs by denying Hawkins his chosen method of religious practice— refraining from modifying his hair or allowing others to touch it.  *See Shepherd*, 27 F.

---

[5] Rastafarianism certainly is a religion within the meaning of the Free Exercise Clause, as other courts—including the Second Circuit—have determined.  *See, e.g.*, *Shepherd v. Sanchez*, 27 F. App'x 31, 33 (2d Cir. 2001) (summary order) (finding Rastafarian plaintiff's allegation that "corrections officers pulled out portions of [his] dreadlocks" sufficient to sustain a free exercise claim); *Benjamin v. Coughlin*, 905 F.2d 571, 575 (2d Cir. 1990) (free exercise case noting the "violence done to a[ Rastafarian] inmate's religious beliefs when his hair is cut" (alterations and citation omitted)); *Rossi v. Fishcer*, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015) (concluding that Rastafarian plaintiff "plausibly alleged that defendants have substantially burdened his right to freely exercise his religion . . .").

App'x at 33; *Benjamin*, 905 F.2d at 575; *cf. Hunter v. Rouse*, 2020 WL 8474744, at *5 (N.D.N.Y. Sept. 17, 2020) (denying motion to dismiss where Muslim prisoner alleged that officers assaulted him, "pulled his kufi off of his head," and "proceeded to spit and step on it").

Finally, Petrino has offered no legitimate penological objective that might justify his alleged conduct. *See* Docket Item 37-1 at 6-7; *cf. JCG v. Ercole*, 2014 WL 1630815, at *22 (S.D.N.Y. Apr. 24, 2014) (denying motion to dismiss a prisoner's free exercise claim in light of the defendant's "failure to offer any legitimate reason for denying [religious] meals").

Hawkins therefore has stated a viable free exercise claim against Petrino, and Petrino's motion to dismiss that claim is denied.

## II.   EQUAL PROTECTION CLAIM

Petrino also contends that the amended complaint "do[es] not establish a claim under the Fourteenth Amendment." Docket Item 37-1 at 8. Hawkins responds that Petrino's conduct "violate[d] his right to . . . the equal protections of the law." Docket Item 43 at 3. Again, this Court concludes that Hawkins has stated a claim.

"The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated in the same manner." *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir. 1996) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Typically, a plaintiff asserting an equal protection claim "must allege that similarly situated persons have been treated differently." *Richard v. Fischer*, 38 F. Supp. 3d 340, 354 (W.D.N.Y. 2014) (quoting *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994)). But the Second Circuit has explained that "[a] plaintiff alleging an equal

8

protection claim under a theory of discriminatory application of the law, or under a theory of discriminatory motivation underlying a facially neutral policy or statute, generally need not plead or show the disparate treatment of other similarly situated individuals." *Pyke v. Cuomo*, 258 F.3d 107, 108-09 (2d Cir. 2001); *see Ali v. Connick*, 136 F. Supp. 3d 270, 279-80 (E.D.N.Y. 2015) ("In the context of claims brought against law enforcement officers, courts in this circuit and elsewhere have held that officers' use of racial epithets may be regarded as direct evidence of racial animus and, when combined with physical abuse or other unlawful actions, may establish an equal protection violation." (collecting cases)).

Petrino argues that Hawkins does not allege that he was treated differently than other similarly situated individuals. *See* Docket Item 37-1 at 9. That may be true, but it is not fatal to Hawkins's equal protection claim, *see Pyke*, 258 F.3d at 108-09: on the contrary, "[w]hen the verbal harassment and simultaneous physical abuse alleged in the amended complaint are considered together," the Court has "little trouble concluding that [Hawkins's] allegations [are] sufficient to state a [section] 1983 claim for discrimination of the basis of . . . religion." *See Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) (summary order).

Hawkins alleges that Petrino called him a "stupid Rasta" and said "he not Rasta no more [sic]" while pulling out Hawkins's religious dreadlocks. Docket Item 17 at 5. Petrino's derogatory comments, combined with the apparent targeting of Hawkins's dreadlocks and therefore his religious practice, creates a plausible inference that Petrino acted with the "discriminatory intent" that is "required to show a violation of the Equal Protection Clause." *See Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012);

9

*see also Cole*, 379 F. App'x at 42-43 (plaintiff stated equal protection claim based on allegations that a correction officer "became physically abusive and hit plaintiff in the face while using racial epithets and referring to plaintiff's religion").

Hawkins therefore has stated a religious discrimination claim under the Equal Protection Clause, and Petrino's motion to dismiss that claim is denied.[6]

### CONCLUSION

For the reasons stated above, Petrino's motion to dismiss, Docket Item 37, is DENIED. Petrino shall answer the amended complaint within 30 days of the date of this order.


SO ORDERED.

Dated:   August 7, 2023
         Buffalo, New York


                                               /s/ Lawrence J. Vilardo
                                              LAWRENCE J. VILARDO
                                              UNITED STATES DISTRICT JUDGE

---

[6] In his reply, Petrino notes that Hawkins refers to race in his response. Docket Item 44 at 1-2 (citing Docket Item 43 at 5). Petrino therefore asks this Court to deny leave to amend the complaint and to dismiss Hawkins's race-based claims. *Id.* at 1-3. But Hawkins did not ask for leave to amend in his response, *see generally* Docket Item 43, and Petrino did not move to dismiss any race-based claims in his motion, *see generally* Docket Item 37-1. So the Court does not deny a request that was not made; nor does the Court consider a motion to dismiss a claim that was not raised—especially because that motion to dismiss was made for the first time in reply.