## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MICHAEL HAWKINS,<br><br>     Plaintiff,<br><br>v.<br><br>DAVID MILLER; FRANK PETRINO, JR.; DYLAN PETERKIN; JUSTIN COOK; JOSEPH SULLIVAN; CHAD RAMMING; and ANGELA STEARNE,<br><br>     Defendants. | Case No. 1:20-cv-01798-LJV-LGF<br><br>JURY TRIAL REQUESTED |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff Michael Hawkins, by and through counsel, and for his complaint against the Defendants, alleges as follows:

## INTRODUCTION

1.    This action arises from Defendant prison officials' religiously motivated assault against Mr. Hawkins, a devout Rastafarian. Defendant prison officials beat him, spat on him, tried to break his arm, called him names, mocked his faith, tore out his religious dreadlocks, and then refused to give him medical aid. In doing so, Defendants violated Mr. Hawkins's religious freedom and civil rights under the First, Eighth, and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA).

2.    As a central part of his Rastafarian faith, Mr. Hawkins has taken the Nazarite Vow of Separation, which requires him to grow out his dreadlocks as a sacred

sign of his devotion to God. Even allowing someone to touch his dreadlocks would be sacrilege.

3.      Defendants knew and exploited that fact. After punching, kicking, and spitting on him, they handcuffed him, ignored his cries for help, and ripped forty-five of his dreadlocks from his head. Lest Mr. Hawkins—who they called a "stupid Rasta"—miss the point, Defendant Petrino explained that their assault rendered him "not Rasta no more."

4.      After the assault, the officers dismissed Mr. Hawkins's pleas for medical care. When a nurse finally examined him, she neither documented nor treated any of his injuries. Only after Mr. Hawkins was transferred to another prison did he finally receive medical care.

5.      Federal law provides broad protections against such brutal and disparaging treatment. The United States Constitution guarantees the free exercise of religion and equal protection of the laws to all, regardless of religious affiliation. On top of that constitutional protection, Congress has also provided strong religious freedom protections to inmates by passing RLUIPA, which forbids state and local officials from substantially burdening an inmate's religious exercise unless their action is the least restrictive means of achieving a compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

6.      Those laws, along with internal prison policy, prohibit prison officials from even interfering with the length of a Rastafarian inmate's religious dreadlocks—let alone violently pulling them out.

7.  What's more, Defendants' targeted brutal assault and refusal to provide medical aid are clear-cut violations of the Fourteenth Amendment's Equal Protection Clause and the Eighth Amendment's Cruel and Unusual Punishment Clause.

8.  No prisoner should have to experience what Mr. Hawkins experienced on account of his faith. Mr. Hawkins therefore seeks all available constitutional and statutory remedies to ensure an incident like this does not happen again.

## PARTIES

9.  Plaintiff Michael Hawkins resides in New York, where he is incarcerated at Upstate Correctional Facility. During the events discussed in this complaint, he was an inmate at Orleans Correctional Facility in Orleans, New York.

10. Defendant David Miller was, at all relevant times, a Sergeant at Orleans Correctional Facility. Mr. Hawkins sues him in his individual capacity.

11. Defendants Frank Petrino, Jr., Dylan Peterkin, Justin Cook, Joseph Sullivan, and Chad Ramming were, at all relevant times, correctional officers at Orleans Correctional Facility. Mr. Hawkins sues them in their individual capacities.

12. Defendant Angela Stearne was, at all relevant times, a nurse at Orleans Correctional Facility. Mr. Hawkins sues her in her individual capacity.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal statutory and constitutional law.

14. Venue is proper in the Western District of New York under 28 U.S.C.
    § 1391(b)(2) because the events described in this complaint took place in this
    district, at Orleans Correctional Facility in Orleans County, New York.

## STATEMENT OF FACTS

### Mr. Hawkins's Rastafarian Faith

15. Mr. Hawkins is an observant Rastafarian.

16. He has been registered as a Rastafarian in the prison's religious registry for as
    long as he has been incarcerated.

17. As a Rastafarian, Mr. Hawkins has taken the Nazirite Vow of Separation
    described in the Old Testament of the Bible: "When either a man or a woman
    makes . . . the vow of a Nazirite, to separate himself to the LORD," "[a]ll the
    days of the vow of his separation there shall no razor come upon his
    head . . . and [he] shall let the locks of the hair of his head grow." Numbers 6:2–
    5 (King James Bible).

18. Mr. Hawkins's dreadlocks therefore serve as a sacred symbol of his devotion to
    God. His hair cannot be combed, cut, or touched by another person. *See, e.g.*,
    *Benjamin v. Coughlin*, 905 F.2d 571, 573 (2d Cir. 1990); *Shepherd v. Sanchez*,
    27 F. App'x 31, 32 (2d Cir. 2001).

### Assault at Orleans Correctional Facility

19. In January 2018, Mr. Hawkins was incarcerated at Orleans Correctional
    Facility, a medium-security state prison in Orleans, New York.

20.   Because of a verbal disagreement with the Defendant correctional officers, Mr. Hawkins was moved from his ordinary cell to the Special Housing Unit. Tensions between Defendants and Mr. Hawkins flared at several points as verbal disagreements grew more and more heated.

21.   The tension reached a peak on January 15th when, prior to the assault, Mr. Hawkins repeatedly asked the officers to help him receive mental health treatment. They dismissed his request.

22.   Rather than get him the help he asked for, the officers repeatedly banged on the door of Mr. Hawkins's cell and instructed him to stop asking for help. This continued for several hours.

23.   Later that day, Defendant correctional officers came to Mr. Hawkins's cell while conducting a master count of all prisoners. Although they could not see Mr. Hawkins from outside the cell, they could hear him continuing his pleas for mental health treatment.

24.   The officers called over their Sergeant, Sergeant Miller, who repeatedly pressed Mr. Hawkins to stop asking for mental health treatment and instead, come within their line of sight from outside the cell. Mr. Hawkins remained where he was as the officers escalated the situation.

25.   Despite being fully aware of Mr. Hawkins's presence in the cell for their count, the officers and Sergeant Miller entered the cell and quickly approached him.

26. The officers were not authorized to enter his cell, as Mr. Hawkins could see, given that they were not wearing the protective clothing normally worn by units tasked with removing a prisoner from their cell.

27. Concerned for his safety following six armed officers' unannounced entry into his cell, Mr. Hawkins rose and assumed a defensive stance.

28. Officer Petrino punched Mr. Hawkins in the face several times and spat in Mr. Hawkins's face.

29. Officer Cook kicked Mr. Hawkins in the head.

30. When Mr. Hawkins started screaming for help, all five officers collectively assaulted Mr. Hawkins, punching and kicking him in the head, face, and body.

31. Officer Ramming then held Mr. Hawkins's left arm out and stepped on the back of his elbow, attempting to break it.

32. While the others assaulted Mr. Hawkins, Sergeant Miller stood back and observed.

33. Next, the officers handcuffed Mr. Hawkins.

34. While Mr. Hawkins was handcuffed, Officer Petrino called him a "stupid Rasta" and began forcefully tearing out his religious dreadlocks.

35. Officer Petrino tore out over 45 dreadlocks from the root. After ripping out Mr. Hawkins's dreadlocks, Petrino declared that Mr. Hawkins was "not Rasta no more."

### Denial of Medical Attention and Transfer

36. The officers then took Mr. Hawkins to a holding cell, where he pled for medical attention for his numerous injuries as his dreadlocks continued to fall out.

6

37.  Rather than get him the needed medical attention, Sergeant Miller kicked the dreadlocks out of the holding cell.

38.  Eventually, Nurse Stearne came to visit Mr. Hawkins in the holding cell. Mr. Hawkins told her about the assault and his wounds, some of which were plainly evident because his scalp and lip were bleeding, many of his dreadlocks were missing, and some of his dreadlocks were on the ground. He also told her he was in excruciating pain and that his left arm felt like it was broken.

39.  Nurse Stearne cut off Mr. Hawkins's shirt to examine injuries to his arm.

40.  Nurse Stearne saw that at least Mr. Hawkins's arm and scalp were injured, but she neither documented nor treated many of Mr. Hawkins's injuries.

41.  Nurse Stearne did not administer medicine to Mr. Hawkins despite his statement that he was in excruciating pain.

42.  Nurse Stearne did not clean, dress, or document many of Mr. Hawkins's wounds.

43.  Later that night, Mr. Hawkins was transferred to Attica Correctional Facility, a maximum-security facility in Attica, New York, 30 miles away.

**Spiritual, Emotional, and Physical Harm to Plaintiff**

44.  The assault and misconduct committed by Defendant correctional officers, Sergeant Miller, and Nurse Stearne at Orleans Correctional Facility caused physical, emotional, and spiritual harm to Mr. Hawkins.

45.  After Mr. Hawkins arrived at Attica, the staff evaluated his injuries and sent him to an outside hospital—Warsaw Community Hospital.

46. The staff at Warsaw Hospital found that Mr. Hawkins had suffered torn ligaments in his left elbow, bruised ribs, a black eye, a busted lip, and cuts and bruises on his face.

47. He was prescribed 600 mg of Ibuprofen, an arm sling, and physical therapy, but he never received the arm sling and his physical therapy did not begin for four months.

48. In the years since the attack, Mr. Hawkins has suffered from mental and emotional distress stemming from the physical pain of his injuries, the targeted nature of the attack, and the destruction of his sacred dreadlocks.

49. Mr. Hawkins experienced a crisis of faith and continues to fear that he will be attacked for his beliefs.

## Exhausting Prison Grievance Process

50. Mr. Hawkins promptly filed a prison grievance, which was denied.

51. Mr. Hawkins appealed, and on February 14, 2018, the Superintendent denied his appeal.

52. Mr. Hawkins again appealed to the New York State Department of Corrections Central Office Review Committee. After holding a hearing on June 15, 2019, the Committee denied his appeal.

53. Mr. Hawkins therefore exhausted all available internal grievance processes before filing this lawsuit. *See* New York State Department of Corrections and Community Supervision, *Incarcerated Grievance Program*, Directive 4040 § 701.5.

## FIRST CLAIM FOR RELIEF

**Violation of the Free Exercise Clause of the First Amendment to the U.S. Constitution**

**(42 U.S.C. § 1983)**

**Against Defendants in Their Personal Capacities**

54. Mr. Hawkins re-alleges and incorporates by reference all preceding paragraphs herein.

55. The First Amendment forbids the government from "prohibiting the free exercise" of religion. U.S. Const. amend. I.

56. That protection may be enforced by a private action against any person acting under "color of state law" under 42 U.S.C. § 1983. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

57. Defendants are state officials obliged to comply with the First Amendment and are thus subject to liability under Section 1983.

58. A prisoner states a free exercise claim when he shows that prison officials imposed "a burden on his sincere religious beliefs." *Kravitz v. Purcell*, 87 F.4th 111, 128 (2d Cir. 2023). Such a burden can be justified only if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Kravitz*, 87 F.4th at 128.

59. It is well established that shaving or cutting the hair of a Rastafarian inmate violates his First Amendment free exercise rights. *Benjamin v. Coughlin*, 905 F.2d 571, 576–77 (2d Cir. 1990). Accordingly, Orleans Correctional Facility's

grooming policies recognize that Rastafarian inmates' hair cannot be shaved or cut.

60. The extension of this well-settled law to "corrections officers pulling out dreadlocks is straight-forward." *Shepherd v. Sanchez*, 27 F. App'x 31, 33 (2d Cir. 2001) (finding a free exercise violation when a correctional officer grabbed an incarcerated individual's dreadlocks and forcefully removed his bandana, during which time "one of [his] dread locks [was] snatched out of [his] head" (alterations in original)).

61. Mr. Hawkins was registered with the prison as a Rastafarian for over 10 years at the time of the assault.

62. As a Rastafarian, Mr. Hawkins has a sincerely held belief that no one can touch or cut his hair.

63. Mr. Hawkins also has a sincerely held belief that he must grow out his dreadlocks to keep the Nazirite vow. Losing his dreadlocks means breaking that sacred vow.

64. During his assault on Mr. Hawkins, Defendant Petrino ripped over 45 of Mr. Hawkins's religious dreadlocks out of his head. While doing so, he commented that Mr. Hawkins was a "stupid Rasta" but "not Rasta no more" once his dreadlocks were torn out. The other correctional officer Defendants heard Defendant Petrino's remarks and assented to his actions by assisting in the assault.

65.    By ripping out Mr. Hawkins's hair, Defendant Petrino forced Mr. Hawkins to break the Nazirite vow, a central tenet of his faith. This was "a situation where an adherent [was] forced to modify his behavior and violate his belief." *Gill v. DeFrank*, 2000 WL 897152 (S.D.N.Y. 2000), *aff'd*, 8 F. App'x 35 (2d Cir. 2001).

66.    Every dreadlock that Petrino pulled out violated Mr. Hawkins's vow to leave his hair untouched. *Hawkins v. Miller*, 2023 WL 5019602, *8 (W.D.N.Y. 2023).

67.    As shown by Defendant Petrino's disparaging remarks, Defendants knew Mr. Hawkins was an observant Rastafarian and knew his dreadlocks carried religious significance. They assaulted him because of his religious belief and practice. Their collective actions of hitting him, kicking him, spitting on his face, attempting to break his arm, and standing by to allow others to harm him further burdened his religious beliefs.

68.    Following the assault, Mr. Hawkins's dreadlocks continued to fall out of his head because of the injuries he had suffered. He was denied medical care to treat the effects of the attack.

69.    When Nurse Stearne examined Mr. Hawkins, she made no effort to prevent the ongoing loss of his dreadlocks or remedy the resulting injuries to his scalp.

70.    Meanwhile, Sergeant Miller desecrated Mr. Hawkins's dreadlocks, kicking them out of the holding cell.

71.    There are no "legitimate penological objectives" that could justify Defendants' violent assault. Similarly, there are no legitimate penological interests that could be served by pulling out Mr. Hawkins's dreadlocks or making

disparaging comments about his sincere religious beliefs. Nor did officials have any legitimate penological interest in denying medical care to an inmate who had suffered a religiously motivated assault.

72.    Defendants' unlawful actions caused Mr. Hawkins to suffer significant physical harm as well as spiritual, emotional, and mental distress.

73.    Accordingly, Mr. Hawkins seeks all appropriate and available relief, as well as attorney's fees and costs.

**SECOND CLAIM FOR RELIEF**

**Violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution**

**(42 U.S.C. § 1983)**

**Against Defendants in Their Personal Capacities**

74.    Mr. Hawkins re-alleges and incorporates by reference all preceding paragraphs herein.

75.    The Fourteenth Amendment's Equal Protection Clause "requires that all persons similarly situated be treated in the same manner." *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir. 1996) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

76.    That protection may be enforced by a private action against any person acting under "color of state law" under 42 U.S.C. § 1983. *Hafer*, 502 U.S. at 25.

77.    Government officials violate the Equal Protection Clause when they engage in intentional discrimination on the basis of religion. *See Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000) (explaining the intentional

discrimination standard); *Missouri v. Jenkins*, 515 U.S. 70, 121 (1995) (noting that religion is a protected class for purposes of the Equal Protection Clause).

78. Intentional discrimination may be pleaded by multiple methods, including by pointing to "a facially neutral law or policy that has been applied in an unlawfully discriminatory manner, or a facially neutral policy that has an adverse effect and that was motivated by discriminatory animus." *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009) (citing *Brown*, 221 F.3d at 337).

79. A plaintiff can establish an equal protection violation by showing the use of "epithets [which] may be regarded as direct evidence of . . . animus . . . combined with physical abuse." *Ali v. Connick*, 136 F. Supp. 3d 270, 279–80 (E.D.N.Y. 2015) (collecting cases).

80. Such intentional discrimination can be justified only when it is "reasonably related to legitimate penological interests." *Benjamin*, 905 F.2d at 574 (citing *Turner*, 482 U.S. at 78).

81. Defendant Corrections Officers Petrino, Peterkin, Cook, Ramming, and Sullivan singled out Mr. Hawkins and assaulted him.

82. During the assault, Officer Petrino verbally harassed Mr. Hawkins for his faith, calling him a "stupid Rasta." As he ripped out Mr. Hawkins's religious dreadlocks, Officer Petrino said "he not Rasta no more."

83. Nurse Stearne denied Mr. Hawkins medical care to treat the effects of the attack and prevent continuing injury.

84.    Sergeant Miller kicked the religious dreadlocks torn from Mr. Hawkins's head out of the holding cell.

85.    There are no legitimate penological objectives that could justify Defendants' targeted assault. Similarly, there are no legitimate penological interests that could be served by pulling out Mr. Hawkins's dreadlocks or making disparaging comments about his religious beliefs.

86.    Nor can defendants argue that denying medical care to an inmate who has suffered a religiously motivated assault served a legitimate penological interest.

87.    Defendants' unlawful actions caused Mr. Hawkins to suffer significant physical harm as well as spiritual, emotional, and mental distress.

88.    Accordingly, Mr. Hawkins seeks all appropriate and available relief, as well as attorney's fees and costs.

## THIRD CLAIM FOR RELIEF

**Violation of the Religious Land Use and Institutionalized Persons Act
(42 U.S.C. § 2000cc-1, 42 U.S.C. § 1983)
Against Defendants in Their Personal Capacities**

89.    Mr. Hawkins re-alleges and incorporates by reference all preceding paragraphs herein.

90.    RLUIPA forbids officials in a prison system that receives federal financial assistance from imposing a substantial burden on an inmate's sincere religious exercise. 42 U.S.C. § 2000cc-1.

91.  The New York State Department of Corrections and Orleans Correctional Facility receive federal financial assistance.

92.  Defendants are subject to RLUIPA because they are local officials or persons acting under color of state law and are acting "in a program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc-1(b).

93.  Once a plaintiff proves that the government substantially burdened his religious exercise, the government can overcome such a showing only if it "demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

94.  RLUIPA provides an express cause of action for "appropriate relief" against "a government," 42 U.S.C. § 2000cc-2(a). "Government" includes any state, county, or local "official" as well as "any other person acting under color of State law." 42 U.S.C. § 2000cc-5(4).

95.  In addition to the remedies available under RLUIPA, 42 U.S.C. § 1983 also provides remedies for violations of RLUIPA. Section 1983 provides remedies, including monetary relief, for those who have been subject to "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Section 1983 "can presumptively be used to enforce unambiguously conferred federal individual rights," *Health & Hosp. Corp. v. Talevski*, 143 S. Ct. 1444,

1450 (2023), and RLUIPA unambiguously confers federal individual religious freedom protections on state prisoners like Mr. Hawkins.

96.    Mr. Hawkins has a sincerely held religious belief that he must keep the Nazirite vow and grow out his dreadlocks. He also sincerely believes that allowing anyone to touch his dreadlocks or to remove them in any way is prohibited by his Rastafarian faith.

97.    Defendants assaulted Mr. Hawkins on account of his faith, tearing over 45 religious dreadlocks out of Mr. Hawkins's head. In doing so, Defendants forced Mr. Hawkins to break the Nazirite vow and created a substantial burden on Mr. Hawkins's ability to practice his religion.

98.    Recognizing Mr. Hawkins's faith and the burden that assaulting him and pulling out his dreadlocks would impose on him, Defendant Petrino called Mr. Hawkins a "stupid Rasta" and told him he was "not Rasta no more" once he ripped out Mr. Hawkins's dreadlocks.

99.    When Mr. Hawkins recounted the attack to Nurse Stearne, he received no medical attention; she did not even document many of his injuries.

100.    Adding insult to injury, Sergeant Miller kicked Mr. Hawkins's torn dreadlocks out of the holding cell.

101.    The brutal assault was clearly not the least restrictive means of fulfilling any government interest. *See* 42 U.S.C. § 2000cc-1(a).

102.    Nor can defendants argue that denying medical care to an inmate who has suffered a religiously motivated assault was the least restrictive means of fulfilling any government interest. *See* 42 U.S.C. § 2000cc-1(a).

103.    Defendants' unlawful actions caused Mr. Hawkins to suffer significant physical harm as well as spiritual, emotional, and mental distress.

104.    Accordingly, Mr. Hawkins seeks all appropriate and available relief, as well as attorney's fees and costs.

## FOURTH CLAIM FOR RELIEF

**Violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment to the U.S. Constitution for Use of Excessive Force**

**(42 U.S.C. § 1983)**

**Against Officers Petrino, Peterkin, Cook, Ramming, and Sullivan in Their Personal Capacities**

105.    Mr. Hawkins re-alleges and incorporates by reference all preceding paragraphs herein.

106.    The Eighth Amendment protects against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.

107.    That protection may be enforced by a private action against any person acting under "color of state law" under 42 U.S.C. § 1983. *Hafer*, 502 U.S. at 25.

108.    The excessive use of force by corrections officers against an inmate is a cruel and unusual punishment that violates the Eighth Amendment. *See Hudson v. McMillan*, 503 U.S. 1, 4 (1992).

109.    The "malicious use of force to cause harm" is an "Eighth Amendment violation[] *per se*." *Blyden v. Mancusi*, 186 F.3d 253, 262 (2d Cir. 1999). As the Second

17

Circuit has recognized, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated," regardless of the severity of the effect. *Id.* (quoting *Hudson*, 503 U.S. at 9) (alteration in original).

110. The Defendant correctional officers maliciously and sadistically used force to harm Mr. Hawkins by assaulting him, punching him, spitting in his face, kicking him in the head, face, and body, and stepping on his elbow in an attempt to break his arm.

111. Furthermore, the officers knew of and targeted Mr. Hawkins's sincerely held religious beliefs, calling him a "stupid Rasta" and telling him he was "not Rasta no more."

112. Mr. Hawkins was not causing a disturbance at the time of the assault. Indeed, the officers were not wearing the ordinary uniforms of officers tasked with using force to remove an inmate from his cell.

113. As a result of the assault, Mr. Hawkins suffered torn ligaments in his left elbow, bruised ribs, a black eye, a busted lip, cuts and bruises on his face, and permanent bald spots from religious locks being ripped out of his head. He also experienced depression and post-traumatic distress.

114. Defendants' unlawful actions caused Mr. Hawkins to suffer significant physical harm as well as spiritual, emotional, and mental distress.

115. Accordingly, Mr. Hawkins seeks all appropriate and available relief, as well as attorney's fees and costs.

## <u>FIFTH CLAIM FOR RELIEF</u>

**Violation of the Cruel and Unusual Punishment Clause of the Eighth
Amendment, the Free Exercise Clause of the First Amendment, and the
Equal Protection Clause of the Fourteenth Amendment to the U.S.
Constitution for Failure to Intervene**

**(42 U.S.C. § 1983)**

**Against Sergeant Miller in His Personal Capacity**

116.  Mr. Hawkins re-alleges and incorporates by reference all preceding paragraphs herein.

117.  A corrections officer is liable under Section 1983 for failing to intervene when another officer is violating an inmate's constitutional rights in his presence. *See Randolph v. Griffin*, 816 F. App'x 520, 523 (2d Cir. 2020); *see also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.").

118.  As discussed above, Defendant Corrections Officers Petrino, Peterkin, Cook, Ramming, and Sullivan violated Mr. Hawkins's Eighth Amendment, First Amendment, and Fourteenth Amendment rights when they targeted his religious practices, assaulted him, and ripped out his sacred dreadlocks.

119.  Sergeant Miller could have intervened to attempt to stop the attack at any time.

120.  Instead, throughout the entire attack, Sergeant Miller stood by and watched as the officer defendants violently assaulted Mr. Hawkins.

19

121. Sergeant Miller took no steps to intervene or protect Mr. Hawkins in any way after the attack began.

122. As a proximate result of Miller's failure to intervene, Mr. Hawkins has suffered significant physical harm as well as spiritual, emotional, and mental distress.

123. Accordingly, Mr. Hawkins seeks all appropriate and available relief, as well as attorney's fees and costs.

## SIXTH CLAIM FOR RELIEF

**Violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment to the U.S. Constitution for Inadequate Medical Care**
**(42 U.S.C. § 1983)**
**Against Defendant Stearne in Her Personal Capacity**

124. Mr. Hawkins re-alleges and incorporates by reference all preceding paragraphs herein.

125. Prison officials violate the Eighth Amendment when they demonstrate "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Serious medical needs include conditions that, without treatment, could result in "further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

126. Defendant Stearne is subject to the Eighth Amendment because she is a state official, and the Eighth Amendment applies to the states through the Due

Process Clause of the Fourteenth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 344–45 (1981).

127.   Following the group assault by Officers Petrino, Peterkin, Cook, Ramming, and Sullivan, Mr. Hawkins's scalp and face were bleeding, his arm was wrenched, and his dreadlocks were continuing to fall out.

128.   Mr. Hawkins requested medical attention.

129.   While waiting for a nurse to arrive, Mr. Hawkins's dreadlocks continued to fall out.

130.   When Nurse Stearne arrived to see Mr. Hawkins, Mr. Hawkins told her about the brutal assault and his wounds, many of which were evident from his appearance. He also told her he was in excruciating pain and that his left arm felt like it was broken.

131.   Nurse Stearne did not document or treat Mr. Hawkins' injuries. She did not clean or dress any of his wounds. She declined to administer medicine to Mr. Hawkins despite his obvious injuries and his statement that he was in excruciating pain.

132.   When Mr. Hawkins was later examined at Warsaw Hospital after his transfer to Attica, staff at the hospital found that Mr. Hawkins had suffered torn ligaments in his left elbow, bruised ribs, a black eye, a cut lip, and cuts and bruises in the face.

133.   Mr. Hawkins was prescribed 600 mg of Ibuprofen, an arm sling, and physical therapy.

134. Mr. Hawkins also suffered permanent bald spots from religious locks being ripped out of his head.

135. Nurse Stearne's failure to provide adequate medical attention inflicted unnecessary pain and distress and placed Mr. Hawkins at risk of developing an infection on his scalp and on the many cuts he had on his body. Her failure to treat him also prevented his elbow from healing properly.

136. As a proximate result of this denial of medical care, Mr. Hawkins has suffered significant physical harm as well as spiritual, emotional, and mental distress.

137. Accordingly, Mr. Hawkins seeks all appropriate and available relief, as well as attorney's fees and costs.

## **PRAYER FOR RELIEF**

138. WHEREFORE, Mr. Hawkins prays the Court grant the following relief:

    a. Award Mr. Hawkins monetary damages including nominal damages, *see Uzuegbunam v. Preczewski*, 141 S.Ct. 792, 801–02 (2021), for Defendants' deprivation of his constitutional and statutory rights;

    b. Award Mr. Hawkins a reasonable amount of attorney's fees for the work of his attorneys in pursuit of this action and the protection of his rights, as permitted by the laws under which he brings this complaint;

    c. Award Mr. Hawkins all costs, disbursements, and expenses he has paid or will pay, or that were or will be incurred on his behalf in the course of this action;

    d. Award such additional relief that the Court deems just and proper; and

**e.** Any other relief as allowed by law.

<u>**DEMAND FOR JURY TRIAL**</u>

Under Rule 38(b) of the Federal Rules of Civil Procedure, Mr. Hawkins demands a trial by jury on all issues so triable.

Dated: October 22, 2024

Respectfully submitted,

Joshua C. McDaniel
Parker W. Knight III
Kathryn F. Mahoney
HARVARD LAW SCHOOL
  RELIGIOUS FREEDOM CLINIC
6 Everett Street, Suite 5110
Cambridge, MA 02138
(617) 496-4383
jmcdaniel@law.harvard.edu

*/s/Timothy W. Hoover*
Timothy W. Hoover
Spencer Durland
HOOVER & DURLAND LLP
561 Franklin Street
Buffalo, NY 14202
(716) 800-2604
thoover@hooverdurland.com

*Counsel for Plaintiff*